IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | | |
|---|---|---|
| JAMES O. CAMPBELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:10-CV-24 |
| | ) | |
| EAGLE BEND MANUFACTURING, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This civil action is before the court for consideration of "Defendant Eagle Bend Manufacturing, Inc.'s Motion for Summary Judgment" [doc. 12]. Plaintiff has filed a response [doc. 15], and defendant has submitted a reply [doc. 17]. Oral argument is unnecessary, and the motion is ripe for the court's determination. For the reasons that follow, the motion will be granted, and this case will be dismissed.

I.

*Background*

Plaintiff began employment with Eagle Bend in October 1995 as an assembler and worked at various positions until his termination on April 20, 2009. Eagle Bend manufactures and markets automotive parts and components. Plaintiff was an at-will employee throughout his employment at Eagle Bend.

In 2002, plaintiff underwent corrective surgery for carpel tunnel and was placed under permanent restrictions regarding the use of certain equipment. Plaintiff admits that Eagle Bend accommodated his restrictions for this workers' compensation injury. Also in 2002, plaintiff again filed a workers' compensation claim when he sustained work-related rotator cuff injuries to both shoulders. Plaintiff underwent surgery for these injuries and was placed on restrictions. Eagle Bend accommodated these additional restrictions. These workers' compensation claims were settled in approximately June 2003.

Plaintiff re-injured his right shoulder in August 2004 and filed another workers' compensation claim. Plaintiff underwent surgery that resulted in his being off work for four to six weeks. When he returned to work, plaintiff had permanent restrictions, which were accommodated by Eagle Bend. This claim was eventually settled, and the settlement included life-time medical benefits for treatment related to his shoulder injuries.

Eagle Bend employees are subject to an attendance policy that is based on a "point" system. Points are assigned for various infractions including tardiness, leaving early, missing a time clock "swipe," and absences from work. One point is assigned for "Any missing time clock 'swipe,'" while two points are assigned for an "Absence from work (single day) with a call to <u>your supervisor</u> at lease 30 minutes prior to the shift." Two points are also assigned for "Absence from work (up to 2 consecutive days) with a call to <u>your supervisor</u> at least 30 minutes prior to shift and bring in doctor's note when you return." The policy also states as follows:

2

> Two consecutive days missed for the same reason will result in one (1) occurrence of three (3) points issued, provided the Team Member has followed the call-in procedure. Subsequent days missed will result in additional points being issued, unless a doctor's note is presented, in which case the entire absence will be assigned three (3) points, except where the absence qualifies as Family and Medical Leave, Worker's Compensation, Military Leave, Jury Duty, in which case no attendance points are assigned at all.

An employee who accumulates ten points receives a three-day suspension without pay, and an employee who "receives a second 3-day Disciplinary Suspension in a one year rolling period will have their employment terminated." In addition, termination results if an employee obtains twelve points. One point can be deducted from an employee's accumulated point total by working all scheduled time within thirty days from the last absence without another infraction. Larry Strange, the Human Resources Manager; Ted Stolple, the Safety and Health Environmental Coordinator; and Scott Backscheider, the Human Resources Coordinator, all testified that whether points are removed for workers' compensation absences depends upon the individual situation and circumstances. Such decisions are made on a case-by-case basis.

Plaintiff admitted in deposition testimony that he was familiar with the policy and understood it. Plaintiff further admitted that he kept up with his attendance points and knew where to go if he had questions regarding the system. Additionally, plaintiff confirmed in his deposition that he had been counseled nine times for attendance issues between April 1996 and June 2007.

In autumn 2008, plaintiff saw Dr. McNaughton, his treating physician for his shoulder injuries. Dr. McNaughton examined plaintiff on October 8, 2008, and kept him off work for the remainder of the week, through October 10, 2008. Dr. McNaughton also kept plaintiff off work on October 29, 2008, but released him the next day to return to work with certain restrictions. On October 31, 2008, plaintiff left work early. These three attendance events brought plaintiff's point total to thirteen, and plaintiff was informed that he would be suspended for violation of the attendance policy. Plaintiff contested the suspension to Backscheider, telling him that the absences for October 8-10 and 29 were related to his earlier workers' compensation injuries. Eagle Bend examined the circumstances and removed the four points plaintiff had been assessed for these absences.

On November 10, 2008, plaintiff left work early and was assessed one point, which brought his point total to ten points. No disciplinary action was taken. Plaintiff applied for and was granted leave under the Family Medical Leave Act("FMLA") based upon his wife's serious health condition. He was on FMLA leave from November 19, 2008, through December 8, 2008. When he returned to work, because he had gone thirty days without an attendance infraction, a point was deducted on December 10, 2008, bringing his total to nine points. Another point was deducted January 9, 2009, bringing his total to eight points at the start of 2009.

The morning of February 5, 2009, plaintiff was experiencing left shoulder pain and called his supervisor, Mike Johnson, and the office of his treating physician Dr. McNaughton. He did not report to work because of the pain he was experiencing. Plaintiff

4

testified that when he called Dr. McNaughton's office he spoke with Tanya who told him the doctor was booked but he could see the physician's assistant ("PA") the next day, February 6, 2009. Because he was not able to see the doctor, plaintiff requested Tanya to call Strange, which she did. The record contains Tanya's "nurses notes" dated February 5, 2009, in which she confirms that she called Larry Strange and told him that the PA could see the plaintiff the next day but the ideal situation would be to have the results of the MRI, which had just recently been approved, before the plaintiff was seen. Tanya's notes reflect that Strange told her he preferred that plaintiff see Dr. McNaughton and that they [Eagle Bend] should be able to accommodate plaintiff's light duty. She asked plaintiff to call Strange about this. The notes further reflect that an MRI was scheduled and an appointment with Dr. McNaughton was set for Tuesday, February 10.

Plaintiff testified that he called Strange who told him about the doctor not being able to see him, and according to plaintiff, Strange told him he was "in trouble, or something to that effect." According to plaintiff, Strange asked him if he could come in the next day and told him he would find something for him to do that would not make use of his left arm, but he had to be there.

The next day, February 6, 2009, plaintiff reported for work. According to plaintiff, he was assigned to assemble nut plates which bothered his shoulder. Plaintiff testified that his supervisor told him that he needed to perform the task or he could send him home because he did not have anything else for him to do. Plaintiff performed the task all day.

5

Case 3:10-cv-00024-RLJ-CCS   Document 27   Filed 06/22/11   Page 5 of 19   PageID #: 607

In accordance with the attendance policy, plaintiff was assessed two points for missing work on February 5, 2009. Since this brought plaintiff's total to ten points, he was subject to a three-day suspension. At the end of the shift, plaintiff met with Backscheider and plaintiff's immediate supervisor, Randy Cleckner, to notify him that he would be suspended from February 9 through 11. The "Team Member Corrective Action Report" that plaintiff signed states, "Odie needs to remember that 12 points is termination, but that he can reduce his point total by having no absences, lates, or leave early each month. If Odie again reaches 10 points in the next 12 months, according to the employment (sic), his employment will be terminated."

There is some inconsistency concerning what was said at the corrective action meeting. Plaintiff testified that he told Backscheider and Cleckner that he had spoken with the doctor and he was going to see him the following week. Plaintiff's testimony is that Backscheider said that if the doctor covers the absence, he would remove the points and pay him for the time he missed at work. However, Backscheider testified that he told plaintiff that if he provided documentation, Eagle Bend would review it, "and if it came back in his favor that he would be paid for his three days that he was suspended."

On February 10, 2009, plaintiff saw Dr. McNaughton who kept plaintiff off work until the next scheduled appointment on February 19. At the February 19 appointment, Dr. McNaughton kept plaintiff off work indefinitely. After the February 10 appointment, Dr. McNaughton's office faxed a note to Stolpe requesting that plaintiff be excused from work from February 5 through 10. Stolpe testified that he does not recall discussing the note with

6

anyone. He stated that when such a note comes, he files it electronically in the employee's workers' compensation file. Backscheider testified that he never saw the note from Dr. McNaughton's office. Plaintiff testified that he spoke with Strange who acknowledge receipt of the note and said, "we're good" regarding removal of the points. However, Strange testified in his deposition that he had not seen the document until he saw it at plaintiff's deposition the week prior to his own deposition.

After plaintiff saw Dr. McNaughton on February 19, 2009, he met with Stolpe regarding his situation. Plaintiff claimed at this time that his shoulder pain was related to a new work-related injury and made a workers' compensation claim. Stolpe gave plaintiff a panel of three doctors, and Stolpe made an appointment with the doctor of plaintiff's choice for that day. Plaintiff testified that he saw a nursing assistant at Park Med who told him he could go back to work. Plaintiff called Stolpe and told him he did not agree that decision, and Stolpe told him to stay off work for at least a day or two. Plaintiff admitted that he did not receive points for being off these days. He also admitted that he did not receive points for being off from February 10-19. Eventually, it was determined that plaintiff's condition was not the result of a new injury but part of his prior workers' compensation related shoulder injuries.

On April 6, 2009, plaintiff failed to "swipe" his timecard at the start of his shift. In accordance with the attendance policy, plaintiff was assessed one point, which gave him a total of ten points for the second time in a three-month period. Strange approved terminating plaintiff under the terms of the attendance policy. On April 20, 2009, plaintiff

7

met with his immediate supervisor, Mike Johnson, Backscheider, and Dennis Trovillo, the operating manager of the assembly department and was told he was being terminated for accumulating ten points twice with a twelve-month period. Plaintiff admitted in his deposition that during the meeting he did not say he had swiped his card on the day he was charged with failing to do so and he did not challenge the assessment of the one point for the infraction. In fact, he admitted that did not contest the failure to swipe his timecard at any time until his deposition. Plaintiff also admitted in deposition testimony that at his termination he did not question why the two points for the February 5, 2009 absence had not been removed from his total, even though he maintains he was told by Strange that the points would be removed. Plaintiff admitted in deposition testimony that he did not follow up with Backscheider after the suspension meeting to determine if the points had been removed.

   In his deposition, Strange was asked whether there had been any inquiries regarding whether plaintiff had been at work on April 6, 2009, the day he was charged with not swiping his timecard. Strange stated that there was never any reason to inquire. He testified that normally if an employee has an attendance infraction they dispute "they will bring it to our attention and they will ask us to go back and review that. Odie never did that." Strange also testified that employees have other avenues to pursue if they are not satisfied with a decision. There is an employee advocate, similar to a union steward, with whom employees can talk. Employees can also ask for a formal hearing, which would be similar to a grievance hearing in a union shop. Also available to employees is the employee hotline. Plaintiff did not utilize any of these procedures.

8

II.

*Standard of Review*

Defendant's motion is brought pursuant to Federal Rule of Civil Procedure 56, which governs summary judgment.[1] Rule 56(a) sets forth the standard for governing summary judgment and provides in pertinent part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The procedure set out in Rule 56(c) requires that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion." This can be done by citation to materials in the record, which include depositions, documents, affidavits, stipulations, and electronically stored information. Fed. R. Civ. P. 56(c)(1)(A). Rule 56(c)(1)(B) allows a party to "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

After the moving party has carried its initial burden of showing that there are no genuine issues of material fact in dispute, the burden shifts to the non-moving party to present specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec.*

---

[1] Federal Rule of Civil Procedure 56 was amended effective December 1, 2010. The Advisory Committee Notes to the 2010 amendments reflect that the standard for granting summary judgment "remains unchanged," and "[t]he amendments will not affect continuing development of the decisional law construing and applying [that standard]." Fed. R. Civ. P. 56 advisory committee's note. The summary judgment motion in this case was filed after the revised version became effective and therefore is governed by that version. *Cf. Wheeler v. Newell*, No. 09-4549, 2011 WL 204457, at *3 n.3 (6th Cir. Jan. 24, 2011) ("The motion for summary judgment in this case was filed prior to December 1, 2010, and is governed by the version of Rule 56 that was in effect at the time the motion was filed.").

9

*Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir. 1992) (citing *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)).

In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The non-moving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor. *Id.* at 255. The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Id.* at 251-52.

### III.

*Analysis*

In order to state a prima facie case for retaliatory discharge, a plaintiff must prove four elements:

> (1) []he was an employee of the defendant at the time of the injury; (2) []he made a claim against the defendant for workers' compensation benefits; (3) the defendant terminated h[is] employment; and (4) the claim for workers' compensation benefits was a substantial factor in the employer's motivation to terminate h[is] employment.

*Cooper v. Wyndham Vacation Resorts, Inc*., 570 F. Supp. 2d 981, 985 (M.D. Tenn. 2008) (citing *Anderson v. Standard Register Co.*, 857 S.W.2d 555, 558 (Tenn. 1993)).

10

Case 3:10-cv-00024-RLJ-CCS   Document 27   Filed 06/22/11   Page 10 of 19   PageID #: 612

To establish the "substantial factor" element, "a plaintiff must show either direct or 'compelling circumstantial' evidence of a causal connection between the workers' compensation claim and the termination, not just the fact that the latter followed the former." *Id.* (citing *Frizzell v. Mohawk Indus.*, No. M2004–01598-COA-R3-CV, 2006 WL 1328773, at *3 (Tenn. Ct. App. May 15, 2006)). Plaintiff's circumstantial evidence of causation must be "direct and compelling circumstantial evidence." *Hall v. Wal-Mart Stores East, LP*, 637 F. Supp. 2d 588, 599 (M.D. Tenn. 2009) (citing *Newcomb v. Kohler Co.*, 222 S.W.3d 368, 391 (Tenn. Ct. App. 2006)). Although not sufficient standing alone, "[t]emporal proximity may also serve as evidence of causation if the plaintiff's prior job performance was otherwise satisfactory." *Cooper*, 570 F. Supp. 2d at 986. In addition, the "plaintiff's subjective beliefs, mere speculation, or testimony that the employee can think of no other reason for the discharge cannot, in and of themselves, create the requisite causal relationship." *Hall*, 637 F. Supp. 2d at 599 (citing *Newcomb*, 222 S.W.3d at 391).

> Moreover, a plaintiff may not prevail on a wrongful discharge claim merely by showing that a causal connection exists between [his] on-the-job injury and [his] subsequent discharge. Instead, the plaintiff must show that [his] claim for workers' compensation benefits, as opposed to [his] injury, was the true or substantial reason for [his] discharge.

*Reed v. Alamo Rent-A-Car, Inc.*, 4 S.W.3d 677, 685 (Tenn. Ct. App. 1999) (internal citations omitted). Plaintiff has the burden "to establish that his claim for worker's compensation was a substantial factor in his employer's decision to terminate him." *Morris v. Columbia Constr. Co., Inc.*, 109 S.W.3d 314, 317 (Tenn. Ct. App. 2003).

11

If plaintiff establishes a prima facie case, the defendant has the burden of demonstrating that it had a "legitimate non-pretextual reason for the employee's discharge." *Cooper*, 570 F. Supp. 2d at 988 (citing *Anderson*, 857 S.W.2d at 559).[2] If the employer sets forth a legitimate, non-pretextual reason for the termination, the "burden shifts back to the employee to prove the employer's explanation is pretextual . . . [with] 'specific admissible facts, which realistically challenge the defendant's stated reasons.'" *Hall*, 637 F. Supp. 2d at 600 (quoting *Frizzell*, 2006 WL 1328773 at *3).

The only factor at issue in plaintiff's prima facie case is the element of causation, whether plaintiff can show that his claim for workers' compensation benefits was a substantial factor in his termination. Eagle Bend argues that plaintiff cannot show a connection between his *claim* for workers' compensation benefits as opposed to his work related injuries. Plaintiff contends he would not have been terminated if the points had been removed for his February 5, 2009 absence. Defendant points out that temporally this occurred

---

[2] In *Gossett v. Tractor Supply Co., Inc*., 320 S.W.3d 777 (Tenn. 2010), the Tennessee Supreme Court called into question continued application of the *McDonnell Douglas* burden-shifting framework in state retaliation claims. However, in *Moling v. O'Reilly Auto., Inc*., - - - F. Supp. 2d - - - -, No. 09-1100, 2011 WL 112586 (W.D. Tenn. Jan. 13, 2011), the district court analyzed the relevant issues and concluded that the standard applied at the summary judgment stage is procedural rather than substantive. The district court therefore analyzed the plaintiff's state law retaliation claim using the *McDonnell Douglas* framework. This court will apply the same burden-shifting analysis. In addition, the defendant herein cites to *Pickler v. Tasty Buffett*, No. 2:09-CV–02490-CGC, 2010 WL 2594302 (W.D. Tenn. June 23, 2010) regarding the procedural nature of summary judgment. In *Pickler*, the district court had been asked in a diversity case to apply the *substantive* requirements of summary judgment set for the by the Tennessee Supreme Court in *Hannan V. Altel Publishing Co.*, 270 S.W.3d 1 (Tenn. 2008). The district court stated that summary judgment is a procedural device, and in a diversity case the Federal Rules of Civil Procedure control. Therefore, "the fact that a state's procedure for summary judgment has different requirements from Rule 56 is immaterial." *Pickler*, 2010 WL 2594302, at *2 (internal quotation marks and citation omitted).

12

before he made his claim on February 19, 2009, for what he thought was a new injury and many years after his last claim for such benefits in 2004. Plaintiff contends *inter alia* that Eagle Bend did not consistently apply its attendance policy regarding the plaintiff, so the points for February 5, 2009, were not removed, although they should have been.

Plaintiff has not demonstrated the requisite causal connection to establish a prima facie case, as he has not shown that his *claim* for workers' compensation benefits was a substantial factor in his termination. Plaintiff accumulated attendance points for being absent as a result of his work-related injury. "However, simply because plaintiff was absent from work due to the injury over which his workers' compensation claim was filed does not create the essential causal connection to make out a prima facie claim of retaliatory discharge." *Carson v. AJN Holdings*, No. 3:05-CV-294, 2006 WL 3361749, at *4 (E.D. Tenn. Nov. 20, 2006) (citing *Reed*, 4 S.W.3d at 685)).

Plaintiff contends that Eagle Bend did not apply its attendance policy consistently in relation to him because no points are to be assigned for workers' compensation related absences. Plaintiff's interpretation of the attendance policy, however, is misplaced. The policy as quoted above that references workers' compensation is in the context of when two consecutive days are missed and how subsequent days missed will be calculated. Plaintiff admitted in his deposition that everyone who is absent from work for a single day receives two points under the attendance policy.

Plaintiff also contends that he would not have been terminated for violation of the attendance policy if the February 5, 2009 points had been removed. He claims that Eagle

13

Bend inconsistently applied its attendance policy so the points would not be removed, and he would be terminated. An employer's failure to adhere to established company policy can be one form of circumstantial evidence to show causation. *Newcomb*, 222 S.W.3d at 391. However, plaintiff knew that in the past when he had followed through with the human resources personnel, they had removed points for absences related to workers' compensation. This was the case in the Fall of 2008. Plaintiff never followed through with Backscheider to confirm that the documentation from Dr. McNaughton had been received and the two points removed. At his termination, plaintiff did not question why the points had not been removed. All plaintiff has offered is his subject belief and conclusion that the attendance policy was not consistently applied. There must be more. "*Newcomb* does not hold that every failure of an employer to adhere to company policy establishes a prima facie case of retaliation. Rather, evidence must be direct or compelling proof of unlawful conduct." *Phinnessee v. Young Touchstone Co.*, No. 09-1084, 2011 WL 184017, at *8 (W.D. Tenn. Jan. 20, 2011) (citation omitted).

In addition, plaintiff has not shown proof of discriminatory motive on the part of Eagle Bend. "The key to a claim for retaliatory discharge under Tennessee workers' compensation law is intent." *Shields v. Fox Television Station, Inc.*, No. 98-6689, 2000 WL 658054, at *4 (6th Cir. May 9, 2000) (citing *Reed*, 4 S.W.3d at 685) ("explaining that the causation element requires proof of discriminatory motive"). In the past, Eagle Bend saw plaintiff through multiple surgeries connected to work related injuries for carpel tunnel and shoulder injuries. Eagle Bend then accommodated plaintiff's restrictions from those injuries.

*Cf. Crum v. Tyson Fresh Meats*, 390 F. Supp. 2d 658, 671 (M.D. Tenn. 2005) ("[I]t makes little sense that Tyson would [try to set plaintiff up] after already accommodating him so generously at work and incurring the expense of two surgeries."). Further, there is no showing that Eagle Bend's human resources personnel had an improper or evil motive concerning the handling of plaintiff's February 5, 2009 absence. *Cf. Phinnessee*, 2011 WL 184017, at *8 ("There is simply no proof that the reminder was not issued for any nefarious reason. Nor is there evidence to suggest, had a reminder been issued on March 12, 2008, that Phinnessee would have been at work on any of the days for which he later received 'occasion' points."). While plaintiff contends that management people were not as friendly to him after his workers' compensation claims in 2002, these observations are only plaintiff's subjective beliefs and not sufficient to show causation. *Hall*, 637 F. Supp. 2d at 599.

Additionally, it should not go unsaid at this point that plaintiff reached ten points when he was assessed one pont for not swiping his time card at the beginning of his shift on April 6, 2009. This act was not connected in any way to plaintiff's workers' compensation absences or issues. Although plaintiff admitted that he kept up with his point total and knew where to go when he had questions about assigned points, he did not challenge the validity of this point until he sat for his deposition in August 2010. He did not even question the assignment of this point at his termination.

Plaintiff has not established the causal connection element of his prima facie case. Nevertheless, even assuming *arguendo* that plaintiff could establish a prima facie case, he cannot demonstrate that Eagle Bend's reason for terminating him was pretextual. Eagle

15

Bend has stated a legitimate, non-pretextual reason for plaintiff's termination, that he violated the attendance policy. "Excessive absenteeism is a 'legitimate reason for termination.'" *Hall*, 637 F. Supp. 2d at 601 (citing *Carson*, 2006 WL 3361749, at *5). Once the employer has made this showing, the burden shifts to the plaintiff to show that the proffered reason is pretextual.

The plaintiff can demonstrate pretext by presenting proof that the "employer's reasons 'have no basis in fact, or if they have a basis in fact, by showing that they were not really factors motivating the discharge, or if they were factors, by showing that they were jointly insufficient to motivate the discharge.'" *Frizzell*, 2006 WL 1328773 at *3 (citing *Moore v. Nashville Elec. Power Bd.*, 72 S.W.3d 643, 652 (Tenn. Ct. App. 2001)). "The employee, however, faces summary dismissal of his claim if he is unable to demonstrate that he could prove the employer's reason for the discharge was pretextual." *Id.* (citing *DeVore v. Deloitte & Touche*, No. 01A01-9602-CH-00073, 1998 WL 68985, at *11 (Tenn. Ct. App. Feb. 20, 1998)).

Plaintiff was discharged on April 20, 2009, for violation of the attendance policy by accumulating ten points twice within a three-month period. On February 6, 2009, in his written Team Member Corrective Action Report he had been warned that if he reached ten points again in the next twelve months his employment would be terminated. There is no dispute that the points were assessed, so plaintiff cannot show pretext by contending that there is no basis in fact for the reason given. Nor can plaintiff show pretext by arguing that the reason given is insufficient to motivate termination. The attendance policy calls for

16

termination under such circumstances, and plaintiff had been warned less than three months before that his employment would be terminated if he reached ten points again within twelve months.

Plaintiff argues that Eagle Bend used the attendance policy as a "pretext" to rid itself of a troublesome employee with workers' compensation injuries. He contends this was accomplished by not removing the two points for the February 5, 2009 absence. However, plaintiff has not offered proof to place in question Eagle Bend's good faith belief that at the time of his discharge, plaintiff had again accumulated ten points, making him subject to dismissal. "An employer is only required to have a good faith belief, formulated through a reasonable reliance on particular facts, for its employment decision." *Ponder v. Martin-Brower Co., LLC*, No. 3:07-0789, 2008 WL 3852252, at *10 (M.D. Tenn. Aug. 14, 2008) (quoting *Williams v. Columbus Met. Housing Auth.*, 90 F. App'x 870, 875 (6th Cir. 2004)). In addition, there were several times during plaintiff's employment when Eagle Bend did not assess points when under the policy it could have. This fact vitiates plaintiff's argument that Eagle Bend was motivated to use the attendance policy to get rid of him.

Moreover, at the time of his termination, plaintiff did not challenge the decision not to remove the points for the February 5 absence, though he clearly knew how to do just that. He had requested the removal of points in the Fall of 2008, and after a review by Eagle Bend the points were taken off of his total. At his deposition, plaintiff testified that Strange said he was "good" about the points removal; yet at his termination he did not question why those points had not been removed, a circumstance which contributed to his dismissal.

17

Plaintiff also did not follow up with Backscheider to confirm that the documentation had been received from Dr. McNaughton and that the points had been removed. Further, at his termination meeting, plaintiff made no effort to challenge the one point given to him for not swiping his timecard on April 6, 2009, the event which placed his total at ten points. Using plaintiff's logic, without that one point, he would not have been terminated. Yet assessment of that point had nothing to do with his workers' compensation injuries.

Equally important is that plaintiff likewise did not challenge his receipt of this point at any time until he sat for his deposition, in spite of the fact that this point placed him again at a total of ten points. *Cf. Haughton v. Orchid Automation Sys., Inc.*, No. 3-03-0768, 2005 WL 1798624, at*13 (M.D. Tenn. July 27, 2005) ("Ultimately, in order to prove intentional discrimination, the plaintiff is obligated to directly confront the employer's asserted justification for the discharge."). Challenging the assessment of the clock-in point for the first time at his deposition does not place doubt on Eagle Bend's honest belief at the time of plaintiff's termination that he had not swiped his card. At the time of discharge, the record showed that plaintiff had not swiped his timecard, and he did not challenge the point assessment at his termination. Plaintiff has not offered any proof to demonstrate that at the time of his discharge he had not reached ten points in violation of the attendance policy. Nor has he presented proof that Eagle Bend did not have an honest belief that he had violated the attendance policy as demonstrated by plaintiff's records. Again, this fact is substantially supported by plaintiff's failure at the time of his termination to challenge the validity of the timecard swipe and his failure to challenge the fact that the points for the February 5, 2009

18

absence had not been removed from his total points. Thus, because plaintiff cannot show pretext, even if he were able to establish a prima facie case, summary judgment is appropriate.

IV.

*Conclusion*

Accordingly, for the reasons stated herein, defendant's motion for summary judgment will be granted, and this case will be dismissed. An order consistent with this opinion will be entered.

ENTER:

s/ Leon Jordan
United States District Judge